The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Robert J. Steigman presiding. Good afternoon, counsel. Our first case this afternoon is 4241076 Anderson v. Smith. For the appellant, please state your name, counsel. Karen Wilson-Legler. Thank you. And for the appellee, please state your name. Dustin Clark. Thank you. Thank you, counsel. The appellant and appellee will both be given 20 minutes to argue, and then the appellant will be given an opportunity for five minutes in rebuttal. With that, counsel, for the appellant, you may proceed. Thank you, Your Honor. May it please the court. Good afternoon, esteemed justices of the 4th District. Counsel, my name is Erin Wilson-Legler, and I represent the petitioner Megan Smith. Your Honors, you have before you an opportunity to correct a decade-long misinterpretation of an act meant to immunize individuals from civil liability for their participation in constitutionally protected conduct. In so doing, you can provide justice to a woman who has been victimized by the continuation of a slap for nearly seven years. In 2007, the General Assembly enacted the Citizens Participation Act as a means to curb strategic lawsuits against public participation slaps. This act provides an avenue for the victim of a slap to obtain dispositive relief as well as attorney's fees, and the express language of the act mandates that it be liberally construed in favor of swift relief. Unfortunately, the implementation of the CPA has strayed from this mandate of liberal construction, and it has instead rendered it virtually impossible for the victims of slap to obtain the relief they are due. In the seminal case of Sandholm v. Cukor, the Illinois Supreme Court established the following test that remains operative today. First, the movement must demonstrate the lawsuit is based on, related to, or in response to, conduct and furtherance of the movement's right to petition, speech, association, or to otherwise obtain favorable government action. Second, the movement must further prove that the lawsuit is solely based on that protected conduct. Third, and finally, if the movement succeeds on prongs one and two, then the burden shifts to the non-movement to prove by clear and convincing evidence that the conduct was not immunized by the CPA. Very recently, during the briefing period of this appeal, in fact, the Supreme Court reaffirmed this test in Glorioso v. Sometimes Media Holdings, adding that prongs one and two are to be evaluated objectively. In other words, the operative question is whether an objective person would find the acts were reasonably calculated to elicit a favorable government action or outcome. Council, I have a question. In your brief, you described Sandholm and some other cases as follows. The clear, straightforward, burden-shifting standard review expressly stated in the CPA has been warped beyond recognition by the judicial position of extra statutorial burdens upon movements under the Act. That seems to be a pointed, perhaps accurate, criticism of Sandholm, but as you know, we're the intermediate appellate court. Even if we were to agree with you, what are we supposed to do or say about the problem of Sandholm as you describe it? Your Honor, I'm well aware of the mandates of stare decisis and that this honorable court is bound by the Supreme Court's decision and Sandholm and Glorioso, and today we're going to be asking you to strictly apply the test as expressed by the Supreme Court. We are, however, asking your honors to not apply the subtest that has been created by the First District, and I'd like to focus mainly on that issue. In place of that, that you're talking about? Your Honor, that... Is that the Ryan case? Yes, Your Honor. I believe that it first came about in the Ryan case. Let me just add before you go on, I remember being in your position many years ago, arguing a case in front of the Fourth District appellate court, and Sam Smith, who was a wonderful guy, was one of the judges, and I can't remember if it was I or my opposing counsel who were arguing similarly about a decision of the Illinois Supreme Court that was, we asserted, incorrectly resolved, and Justice Smith looked at it and said, so is that what you're saying to us, and that we should write that, and we said yes, and looked off while he said, that would have to be a carefully worded opinion. I just thought, to the extent that's your suggestion to us, I think that still would be a good suggestion. Go ahead, counsel. Thank you, Judge. That is certainly my suggestion, but I'm not operating under any apprehension that Your Honors are going to overrule the Supreme Court today. But we do think that there needs to be, at minimum, some guidance as to how this act is to be implemented, if not an extreme overhaul. So, following Sandholm, the First District created a subtest whereby the movement under the act is required to both prove affirmatively that the claim is meritless and retaliatory. And this subtest was meant by the First District to apply to the second prong of the Sandholm test, namely that the lawsuit is solely based on protected conduct. And we are asking this honorable court to decline to adopt this subtest. In the appellate court decision in Glorioso, Justice Hyman painstakingly outlined several issues with this subtest, garnering favorable attention from the Supreme Court in its ultimate decision in those proceedings. Although the Supreme Court's decision fell short of disavowing the subtest because the court held that the movement failed to satisfy prong one of the citations to Justice Hyman's dissent provides a strong signal of the court's leaning as to this retaliatory meritless subtest created by the First District. Counsel, can I take the lens, the focus just back a little bit and look more broadly? And counsel for the appellee should pay attention to the question because I'll expect his answer to it as well. Prior to the slap anti-slap statute in 2007, a defendant short of going to trial and winning had a number of mechanisms at his or her disposal to get rid of a case to win early. And that's by motion 615 or 619 to 1005. Then came the slap statute. So it has to be adding something. It has to be adding some additional protections for defendants. What's it adding? Because we you've always been able to get rid of a case that lacked merit with emotion. What is the act adding? Your Honor, you are getting to the exact issue that I have tried to raise in the briefing. We have the Supreme Court's decision in Wright Development Group versus Walsh indicating that a motion under the CPA does not create a separate vehicle, procedural vehicle for relief. So it needs to be brought either as a 2619 motion or summary judgment as here. But then we also have the standard promulgated by the Supreme Court. Most recently, that standard being whether an objective person would conclude that the complaint of conduct was reasonably calculated to obtain government relief. So you get a rub there and this gets to the second issue that I wanted to discuss today. You have these procedures and standards and presumptions that are attendant to 2619 motions, summary judgment motions that are all very favorable to the non-movement. Here, the plaintiff. And then on the other hand, you've got the CPA which is meant to be favorable to the defendant. And when you apply those presumptions, specifically in a 2619 motion, movements under the act are put in a situation where they are deemed to have admitted the allegations in the complaint, not only that they are factually correct, but also that it states a valid claim for relief. And then you have the first district coming down and saying, well, you also need to affirmatively prove that this claim is meritless. How is someone to admit the claim has merit while at the same time being required to prove that the claim is meritless? You can't. It's a legal impossibility. And I think... Construing the more specific statute, regardless of whether the vehicle is 615 or 619 or 2105, and this is going to come difficult for trial judges, but do we disregard all the things that we've tried to learn over the years about those standards for decision in favor of the structure of the act? Obviously, my answer to that would be yes, because we have the Supreme Court giving us the standard for reviewing motions under the CPA. That standard does not necessarily incorporate those presumptions, those rules that are attendant to civil procedure, if you will. And I don't think that those two standards or three or four, what have you, I don't think the procedural standard and the standard under the CPA can really be reconciled, because what we are really trying to get at under the CPA is the intent of the plaintiff in bringing this claim. Is this claim brought to punish someone for participating in government? Excuse me. I think you guys have really gotten me to the points where I really wanted to make. So, what Ms. Smith is asking this court to do today is, let's take it back to Sandholm, Glorioso. Those cases require this court to look at two prongs first. First, whether Ms. Smith's conduct was in furtherance of her rights to participate in government. And second, whether the claim brought by the plaintiff is based on that protected conduct. When you apply that standard to this case, objectively, the answer is yes. In his first iteration of the complaint, Mr. Anderson's defamation claim was based on Ms. Smith's not only protected, but privileged statements to law enforcement. He then amends his complaint to assert that the defamation claim is based on a statement that apparently only he heard, or a private statement to her mother made while she is trying to find her phone and trying to report this conduct to the police. So, here's a question. Every malicious prosecution case brought against a private citizen who made a complaint, sounds like it would satisfy the act. Prongs one and two, yes, Judge. Right, but is it repealing the cause of action for malicious prosecution? No. That's why we have prong three. Prong three is where the burden shifts to the non-movement to prove that the conduct was not genuinely aimed at obtaining favorable government outcome or what have you. So, in the malicious prosecution instance, I think, and Mr. Anderson even admits in his brief that such claims are inherently retaliatory. There's no question about it. So, then the burden would shift to the plaintiff to prove, no, this person was wanting me to be arrested for X reason. Take, for example, a situation where you've got an OP, maybe someone is trying to entice that person to get arrested. You know how those types of and you have a non-legitimate request for relief from the government for questionable conduct. But that's not what we have here. What we have is a situation where Ms. Smith claims to have been assaulted in public. She reaches out to the police through her mother to report this conduct, and then she cooperates with the ensuing prosecution. And if that's not conduct that be protected by the CPA, then I would challenge anyone to tell me what conduct is protected. I'm sorry, the screen switched there. So, applying the standard to this case, if we look at the facts, if we look at the record in full, and we look at the pleadings, it's objectively clear to any reasonable person that these claims are based on the fact that Ms. reported Mr. Anderson's conduct to law enforcement and then cooperated in the ensuing criminal prosecution. And if there are no further questions at this time, I would cede the floor to Mr. Clark until my opportunity for rebuttal. Thank you, your honors. Thank you, counsel. Mr. Clark, you may make your argument at this time. Thank you. May it please the court? Counsel. Thank you. I'd first like to address the question of the court just because I was asked to listen and to reply to it. So, I will. The court, and if I mischaracterize the question, please correct me. But the essential question was, prior to the entry of the or the adoption of the CPA statute, a defendant had a number of mechanisms to dispose of a case early. Summary judgment, 619, 615, etc. Then came the CPA. Doesn't it have to be adding some additional protection? The short answer is yes, but not in the way that counsel for the appellant has portrayed it. The type of action that the CPA is designed to protect against is a slap. And so, and it has a fee shifting component to it that protects individuals who are subject to a slap. That's why the analysis is designed to look and see, at least as to prong two, was this a slap? If the answer is no, then yes, all the other mechanisms are still available. But if they find it's a slap, well, the defendant in that case is entitled to their attorney's fees. And that is the added protection. Because if the mechanism didn't have, or if the statute didn't have an attorney's fee shifting component to it, essentially, they would be in the same position. If they got it dismissed under 619 without it a slap suit, well, they still got to pay for their litigation in most circumstances, unless it was frivolous or something along those lines. Same with pronged, excuse me, same with an action under summary judgment. So, the only difference is an attorney's fees clause? Is that the only difference? I think the court raises a good question. It's what's the additional protection? And the protection is against slaps. It's not against any defamation claim or any malicious prosecution claim. It's only those that are, by definition of what a slap is, designed to chill some type of speech or petitioning the government, et cetera. So, if it's not within that narrow band of a slap, then they shouldn't be getting this additional protection. There are also procedural additional protections. Namely, once a slap or once a motion to dismiss is filed under the CPA, everything stops. No discovery can be conducted. You have to have a decision or a hearing within 90 days. There are additional protections that you don't see in a 619 motion or in a motion for summary judgment. So, there are additional protections. But ultimately, the focus is and should be, look, are they subject to a slap? Or is this just a dispute that the normal American rule should apply to? If not, then yeah, they might have it dismissed for some other reason, but they don't get their attorney's fees under those. But in the slap statute, it talks about the court making findings. And in the third step, by clear and convincing evidence, that is so foreign to what judges learn to do on a 619 motion or a 615 motion or a 2105 motion. And it just feels as though it is incompatible that we can't have both a slap motion be decided according to the statute and have all of these normal procedural rules on a dispositive motion, which we never let judges do findings on motions. We never do. This is totally new. How are they compatible? Your Honor, quite frankly, and I hate to say this, but you'd have to take that up with the Supreme Court. The decision in Sandholm and its progeny have said, look, your relief, your mechanism for obtaining relief under the CPA is through a 619 or a motion for summary judgment. Well, that's the vehicle, right? You may be in an Uber, doesn't make you an Uber driver. That's the vehicle. The Supreme Court also in analyzing the issues in both Sandholm and its most recent decision, don't just fall into the trap of the, well, the plaintiff has alleged it, so I guess we have to accept it. That's not how they approach it. I agree. It's fundamentally different than how we've approached dispositive motions bearing those section numbers. Well, to be clear, 615 is not an appropriate vehicle to bring this. Just to be clear. I think there was mentioned by the appellant that it was. It's not. It's on me. Okay. The 619 requires affirmative allegations, whether that be through affidavit, deposition testimony, et cetera. Same with the motion for summary judgment. Well, that's actually not true. It requires an affirmative issue, an affirmative matter, and if it's not shown by the pleadings, then it requires evidentiary support. Thank you, Your Honor. You're absolutely correct. In this case, it would be difficult to imagine a circumstance where you could meet the standards of Sandholm and not present in a 619 some affirmative information, to your point, which I agree, that does make it a bit foreign, but those are the vehicles available for bringing this. I hear the court's concerns, but it's essentially, it seems to me that the CPA is trying to strike a balance. It's saying, look, we want quick resolution of these very obvious slapsuits, the bad ones where you've got a multinational corporation who is mad that somebody says, ah, you're poisoning the water. And so boom, $2 million defamation claim, right? And what are these people supposed to do other than shut up? And then the matter gets dismissed. They want quick resolution so that they are not, that type of speech is not quelled. Here, that's a very unique set of circumstances. The standard isn't limited to big corporations, right? I understand that. I understand that.  But you understand that the timing requirements is an additional protection. It's saying, look, we're going to try to get to a quick resolution of whether or not this is a slap. And that's the focus of that analysis. And I agree, the vehicle is a bit clunky for it, but it's the vehicle we have. Well, it's not the clunkiness I'm worried about. What I'm trying to establish here is whether there's some way to reconcile the rules of the road on 619 and 2105 with a slap motion. It seems as though they conflict. And this is a good case to make that analysis because that's exactly what the trial court did. He didn't make any findings. He made the statement that these are questions of fact, which if you were deciding a 619 motion is normally a perfectly good answer. But it doesn't seem like that's what the act is calling for. He has to make those findings. It's the way that I view the case law on this and the way it's been applied in a 619 and a summary judgment. And I'm going to speak about these at the same time for timeliness purposes. But the way that I view the analysis of these situations is, yes, when you're in count one or prong one of the test and prong two of the test, essentially you are in the realm of, look, we have a deferral to the pleadings. We have deferral to the non-moving party. These are things designed to address. You know, is this a slap suit from a formalistic view? It's not until those affirmative matters are dealt with, those consistent with 619 and summary judgment motions are dealt with that you then have this balancing mechanism where it's like, well, maybe there's some evidence that we haven't seen that flips it. And I don't see that happening too often in a summary judgment context, but it certainly could happen in a 619 context where, hey, on its face, this was filed just going to retaliatory intent. If it was solely retaliatory, it was filed days after the speech was made and they sued them for $3 million, just going to that two-factor test. Well, on its face, it looks like we get passed. You know, they've met their burden on that. The defendant in that matter would meet their burden, but maybe there's something else behind that. Maybe that $3 million is totally appropriate. Maybe they needed to file so quickly for something that shows that, hey, we're not, we're just trying to get relief here. And the relief maybe can't be dealt with, you know, primarily by legal means. I did want to address, if the court would allow, just Glorioso. And I'm sympathetic to the appellant here. It's quite the plight to be in the briefing stage and then be asking this court to overturn Sandholm and then have Glorioso say, no, Sandholm is the law of the land. The appellant attempts to pivot in her reply by asking this court to create a split in the circuits by following the dissent and the requiring the moving party to prove that the complaint is meritless and retaliatory. Essentially, appellant is asking this court to read some tea leaves of the Supreme Court in Glorioso and interpret the court's recitation of the procedural history of the Glorioso case as a wink and a nod to other courts to present a case to it that it can take up and overturn the 13-year precedent. Let's put the tea leaves aside. We still have to decide if we think that Ryan is right. Let's just talk about whether Ryan's right. No, I agree. One thing to keep in mind, Ryan is not the first case that actually set this standard out. Hytel is the first case that set this standard out. Hytel actually precedes Sandholm. The court in Sandholm was aware of this standard in Hytel and then consistently throughout the Sandholm decision, they say meritless, retaliatory slaps, meritless, retaliatory slaps, meritless, throughout the entire decision. Then to make a workable standard, the first appellate district took that and said, okay, well, if we're going to talk about not wanting to allow meritless and retaliatory slaps to go forward, then a matter that is both meritless and retaliatory should be kicked out of court. What does meritless mean in this context? I want to elaborate on the question. A judge may grant 100 dispositive motions, which means that the case lacks merit. A judge will sanction a case probably less than one in a hundred times, meaning it's not only lacking in merit, but it is frivolous. In this context, are we talking about simple merit or are we talking about frivolity, something that has not got a proper basis either in fact or law? I think it's the former, Your Honor. I'm sorry, say again. I think it's the former. I don't think it's frivolousness that we're looking at here. It's whether or not in the motion for summary judgment stage or the summary judgment stage, is there evidence available that creates an issue of material fact to prove the essential elements of the claim? That isn't a fair playing field. If we're going to just use the dispositive motion standard to determine merit, we never determine merit of the plaintiff's case on a 619 motion or a summary judgment motion. We just say it's for the jury to decide. It can't tell us whether there's merit to the case. Again, I think the court needs to look at the purpose of the act, which is to resolve at an that doesn't necessarily mean frivolous matters. It means those matters that there's not enough evidence to support, to even take it to the jury. I think that is the position and I understand minds can disagree. Give me something in the case law that says, in this context, merit is the same thing as no question of fact. If the court would bear with me for a second, I will be happy to provide that there is case authority along those lines. It is in my briefing, Your Honor. One moment. If it's in your brief, don't worry. Apologies, yes. We call it merit and yet that's a different question, right? Because we don't determine in a motion for summary judgment or a motion to dismiss. The act doesn't change that question at all? I don't think so, Your Honor. I think you're looking to see whether or not the plaintiff has the ability to carry their case, whether there is evidence available. A meritless claim would be one under the framework that's been provided to one that essentially you could never complete, which gets to, or you could never prove. The allegations here are that Mr. Anderson can't make his claim because there's, and I have yet to follow the logic here, but essentially that there's no issue of material fact on the issue of whether he battered her other than his self-serving statements. When there are multiple statements from defense witnesses under sworn testimony who say, I was looking at it. I was looking at the event when it was supposed to have occurred. I took pictures of it and yet I did not see a battery occur. That seems to be an issue of material fact. Why is it meritless? And this is a question the Supreme Court did not choose to address. Why is it meritless and retaliatory? If it's a meritless suit, we're all on the same page. That's a bad suit. We understand why slap would apply to it, potentially apply to it, but why not a suit that is under the standards of motions meritless or sorry, meritorious, but is retaliatory. Why not have it stand on either leg instead of requiring both? I think again, it goes to whether or not we should assess the costs of the litigation against one party or the other. We're trying to look into what was the intent of the plaintiff. If the intent of the plaintiff was to quiet the issues with just the threat of prosecution, yeah, we're looking at what their intent was. And so since we're looking at a very unique set of circumstances where we shift the costs of the litigation from one party to the other in derivation of the common law, yeah, we need to look and see whether or not it's both meritless, just like any other, which to your point would also be dismissed under 619 or motion for summary judgment. But if it's meritless and retaliatory, well, now we've got a slap and now those fees are going to get shifted and we're going to have a What if it is not under the standards of motions determined to be meritless at the motion hearing, but the evidence shows it is retaliatory? I think it's a good question. I think. Because the Supreme Court, I forget which case, says 90% of the time they don't have, slaps don't have any chance of winning. Well, if they win, that means 10% of the time, it doesn't mean that they are per se lacking in merit. Right. I hate to punt on this, but I think I have to punt to the legislature trying to balance the common law right to seek you know, relief for malicious prosecution, defamation, etc. against the harm that slaps are doing to the public discourse. So I think that is, you know, to your point, yeah, there's going to be 10% of the cases that are slaps, their intent is to stop people from speaking, but yet they still also are able to prove that they were damaged by those statements. And the Supreme Court says slaps include those 10%. So they cannot be looking at only merit if they're willing to call 10% of cases slaps, right? Yeah, I think it has to be both, which is the standard we have. Which is the standard we have. Well, no, because if it's both, those 10% wouldn't qualify as a slap case, which means the Supreme Court's contradicting itself by saying 10% of them win. So if 10% of them win, just because you were acting retaliatory, doesn't mean you are also proceeding forward on a meritless claim. Oh, I see your, yeah, I see your point. We're just back to talking about merit. Right, right. And it's got to be more than that. Right. Again, I think the, and I'm sorry, I have to wrap up here with 50 seconds left. This is an interesting conversation about public policy and I appreciate it. But the Sandholm and Glorioso, the court had an opportunity here to address this second prong and they said, nah, we're not going to address it. We've got 13 years of precedent from the first appellate district and a single, the only other district to take this up is the fifth, unfortunately in a 2021 unpublished, but they did adopt this two prong standard. So the only, this would be a derivation from the current law of the circuits creating a circuit split, which would necessitate a request to the Supreme Court to look at it. But I do think it's a working for 13 years and to disrupt that at this point, I don't think would be in these litigants interests or in the interests of maintaining, you know, stare decisis and the rule of law. Thank you, your honors. I appreciate your time. Thank you, counsel. Counsel for the felons, you have an opportunity to give us your rebuttal argument at this time. Thank you, judge. So to the extent that the meritless retaliatory sub-test existed prior to Sandholm, the fact that the Sandholm court did not adopt that test, I think is likewise telling. In addition to the multiple citations to the dissent criticizing this test in glorioso. Now the Supreme Court did have an opportunity to address prong two in glorioso. They chose not to. Doing so would have been dicta, so it would not have been binding precedent because it wasn't a decisive issue in the case. I think what they did by citing Justice Hyman's dissent so many times, for lack of a better words, they left the door open for a case exactly like this to come in and clarify that standard. You know, as noted by Justice Hyman, the retaliatory meritless sub-test appears nowhere in the language of the CPA or in any Supreme Court precedent interpreting the act. Rather, a careful and fair reading of those materials establishes that SLAPs are inherently retaliatory and meritless. Those terms are descriptors. They're adjectives. They are not elements to be proven under the act under any iteration of the case as set forth by the Supreme Court. Looking at Mr. Anderson's brief, I took a moment to pull up the definition of meritless that I think Mr. Clark was alluding to. He cited to the Prakash case, which defines meritlessness as only if a movement disproves some essential element of the non-movement's claim. But again, a movement can't do that in a 2619 motion because there's no evidence. You can have an affidavit that maybe challenges an allegation in a complaint, but under the standard attendant to a 2619 motion, that allegation is deemed admitted. So I don't think that this definition of meritless really resolves the primary issue here. That issue being that the standards simply don't mesh and they don't work together. And I would disagree with Mr. Clark's statement that the standard has been working for 13 years. If you look at the number of cases and the amount of times that relief has been granted, very few plaintiffs have or movements, not plaintiffs, very few movements under the act have obtained its relief. And that doesn't start contrast to the express mandate in the act to construe this act liberally in favor of relief. I would note that Mr. Anderson's brief focuses mainly on this retaliatory meritless subtest that following Glorio. So I think there's a good chance that the Supreme Court is going to determine that that is not how prong two is to be considered. And the fact of the matter is Mr. Anderson has not and cannot separate his claims from the fact that he was criminally prosecuted. And it's this inability throughout the briefing in the trial court, throughout the argument in the trial court, throughout the briefing in this case, in this case on appeal, that his damages derive solely from the fact that he was criminally prosecuted. And that criminal prosecution sprang from Ms. Smith's clearly protected conduct under the act. Again, that seems to take away any claim for malicious prosecution. It seems to be broad enough to say, how would it coexist? It's always a request to have the government help you. You're right, Judge. And I would agree with Mr. Clark on some of his answers here. I think that we need a closer look at the language enacted by the General Assembly. We need a closer look at how that language is applied by the Supreme Court. And I think we need to answer some of these questions about how do we protect people who are engaging in protected conduct without unnecessarily getting rid of certain claims within the common law. But when you're looking at this case specifically, what you have is a non-published statement or a private statement between a mom and a daughter. And then Mr. Anderson is somehow claiming that his work contracts were changed because of that. Your Honors, may I conclude? Yes. Thank you. I would ask in conclusion that Your Honors provide some much-needed guidance on the standard for reviewing the request under the CPA, find that Ms. Smith has met her burden, reverse the trial court's decision to remand this case for a determination as to attorney's fees. Thank you very much for your time, Your Honors and counsel. Thank you to both counsel. This court will take this matter under advisement and issue a written ruling in due course.